UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KNELAND O. WILSON

                      Plaintiff,

      v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                      Defendant.
_____

**DECISION
and
ORDER

16-CV-00664V(F)
(consent)**

APPEARANCES:                LAW OFFICES OF KENNETH R. HILLER
                                       Attorneys for Plaintiff
                                       BRANDI SMITH, of Counsel
                                       6000 North Bailey Avenue
                                       Suite 1A
                                       Buffalo, New York 14226

                                       JAMES P. KENNEDY, JR.
                                       UNITED STATES ATTORNEY
                                       Attorney for Defendant
                                       EMILY M. FISHMAN
                                       Assistant United States Attorney, of Counsel
                                       Federal Centre
                                       138 Delaware Avenue
                                       Buffalo, New York 14202, and

                                       STEPHEN P. CONTE
                                       Regional Chief Counsel
                                       United States Social Security Administration
                                       Office of the General Counsel, of Counsel
                                       26 Federal Plaza
                                       Room 3904
                                       New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) and a Standing Order (Dkt. No. 19), to proceed before the undersigned. (Dkt. No. 19-1). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on March 17, 2017, by Plaintiff (Dkt. No. 15), and on May 15, 2017, by Defendant (Dkt. No. 17).

**BACKGROUND**

Plaintiff Kneland Wilson, ("Plaintiff" or "Wilson"), born on March 20, 1960 (R. 37), seeks review of Defendant's decision denying him Disability Insurance benefits and Supplemental Security Income ("SSI") ("disability benefits"), under Title II and Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had the severe impairments of a fractured right arm and shoulder with post-traumatic damage and panic disorder with agoraphobia (fear of unsafe surroundings) (R. 12),[2] that Plaintiff's hepatitis C, liver cirrhosis, history of alcohol abuse in remission, complaints of foot pain, obesity and psoriatic arthritis were not severe (R. 13), and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 14). Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform a full range of medium work with limitations to no reaching more than 12 inches with the right

---

[2] "R" references are to the page numbers of the Administrative Record electronically filed in this case for the Court's review. (Dkt. No. 20).

arm, no lifting more than five pounds with the right hand using the right arm as a prop, no climbing ladders, ropes or scaffolds, no more than occasional bending, stooping, balancing, climbing, kneeling or crawling, no work around heights or dangerous moving machinery, no work with the general public, more than frequent contact with coworkers, or more than occasional contact with supervisors. (R. 16). As such, Plaintiff was found not disabled, as defined in the Act, at any time from Plaintiff's alleged onset date of September 8, 2008, through the date of the Administrative Law Judge's decision on December 17, 2014.

## **PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on May 2, 2011 (R. 197-99), that was initially denied by Defendant on November 11, 2014 (R. 144). On February 5, 2015, Plaintiff, represented by Patricia M. Brooks-Bundy ("Brooks-Bundy") a paralegal with Legal Advocacy for the Disabled, appeared and testified at a hearing before Administrative Law Judge Nancy G. Pasiecznik ("Judge Pasiecznik" or "the ALJ"), along with vocational expert ("VE") Joseph Pierson ("Pierson" or "VE") in Buffalo, New York. (R. 41-85). Pursuant to the assignment of ALJ Donald T. McDougall ("Judge McDougall") for further administration of Plaintiff's case a second hearing was held on September 8, 2014, where Plaintiff, represented by Katherine Trainon, Esq. ("Trainon"), appeared and testified. (R. 86-135). ALJ McDougall's decision denying Plaintiff's claim was rendered on December 17, 2014. (R. 10-23). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on June 17, 2016. (R. 1-5). This

action followed on August 16, 2016, with Plaintiff alleging that the ALJ erred by failing to find him disabled.  (Dkt. No. 1).

On March 17, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 15) ("Plaintiff's Memorandum").  Defendant filed, on May 15, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 17) ("Defendant's Memorandum").  Plaintiff filed a reply to Defendant's motion on the pleadings on June 5, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 18).  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion for judgment on the pleadings is DENIED; Defendant's motion for judgment on the pleadings is GRANTED.

## **FACTS[3]**

Plaintiff, born on March 20,1960, alleges that he is unable to work as a result of anxiety, panic attacks, agoraphobia (fear of surroundings) and a right shoulder injury.  Plaintiff alleges that his right arm and shoulder were injured during an assault in prison in 2008, and that Plaintiff's mental impairments resulted from a nervous breakdown he suffered while confined in a holding center for five months.  (R. 1044).  Facts pertinent to the issues raised in Plaintiff's Memorandum include Plaintiff's visit on October 10, 2011, to Gregory Fabiano, Ph.D., ("Dr. Fabiano") who, upon completing a psychiatric evaluation of Plaintiff, assessed Plaintiff with the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration

---

[3] Taken from the pleadings and administrative record.

and attention, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions and deal with stress. (R. 468). Dr. Fabiano diagnosed Plaintiff with Axis I[4] panic disorder without agoraphobia, adjustment disorder with depressed mood, and alcohol dependence in full remission. *Id.*

On October 19, 2011, H. Findlay ("Findlay"), a medical consultant with the New York State Office of Temporary and Disability Assistance, completed a form request for medical advice and opined that Plaintiff was able to perform light work, limited to frequently lifting and carrying 10 pounds and occasionally 20 pounds, walking and standing for six hours in an eight-hour workday, and avoiding repetitive overhead activity with the right shoulder. (R. 483).

On April 18, 2012, Plaintiff sought treatment from the Erie County Medical Center ("ECMC") emergency room where Victoria Brooks, M.D. ("Dr. Brooks"), noted that Plaintiff sought anxiety medication after suffering a mental breakdown when providing a urine sample in the presence of his parole officer. Dr. Brooks refused to prescribe medication to Plaintiff noting that Plaintiff was receiving medication and counseling from Mid-Erie Counseling and Treatment Services ("Mid-Erie"). (R. 558-59).

On June 27, 2012, Elizabeth Galanti ("Counselor Galanti"), a licensed forensic mental health counselor with Mid-Erie, completed a mental functional limitation evaluation form on Plaintiff and noted that the evaluation of Plaintiff was based on

---

[4] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

Plaintiff's mental state while Plaintiff was not drinking alcohol, and opined that Plaintiff's ability to function was high when Plaintiff abstained from alcohol and took his medication as prescribed. (R. 623).

On November 11, 2013, Mark Zambron, M.D. ("Dr. Zambron"), completed an examination on Plaintiff for Plaintiff's hypertension and noted that Plaintiff reported anxiety, nervousness, and frequent panic attacks, and requested that his Klonopin (panic) medication be refilled until Plaintiff's next visit with Joy Kreeger, M.D. ("Dr. Kreeger"), Plaintiff's psychiatrist at Elmwood Health Center ("EHC"). (R. 1017-19).

On December 13, 2013, Dr. Kreeger completed a psychiatry progress note on Plaintiff and noted that Plaintiff reported over-productive thought processes with increased anxiety and fearfulness associated with Plaintiff's severe psoriasis (skin rash), and that Plaintiff denied psychosis, mania and depression. (R. 1042).

On January 29, 2014, Plaintiff presented to ECMC emergency room with shoulder, left leg and low back pain where William Flynn, M.D. ("Dr. Flynn"), noted that Plaintiff reported that his Motrin and gabapentin (pain) medications were not relieving Plaintiff's pain. (1001-02).

Plaintiff returned to ECMC on February 6, 2014, with shoulder, back, and ankle pain where an X-ray of Plaintiff's lumbar spine completed the same day revealed mild arthritis. (R. 1004-05).

On February 21, 2014, Patti Merritt ("Ms. Merritt"), a licensed clinical social worker at EHC completed a psychosocial evaluation on Plaintiff and diagnosed Plaintiff with Axis I panic disorder with agoraphobia, social phobia, substance abuse in

remission, Axis II cluster B[5] personality traits, Axis III chronic hepatitis C, basal cell cancer and pain, Axis IV disruption of family, and an Axis V Global assessment of functioning scale ("GAF")[6] score of 55. (R. 1043-47).

On November 14, 2014, Psychologist T. Andrews, Ph.D., ("Andrews"), a psychologist with the Social Security Administration, completed a Psychiatric Review Technique on Plaintiff and evaluated Plaintiff with a mild limitation to Plaintiff's ability to perform activities of daily living and maintain concentration, persistence and pace, and a moderate limitation to Plaintiff's ability to maintain social functioning. (R. 504).

**Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

---

[5] Cluster B personality traits include borderline personality, narcissistic, histrionic, and antisocial personality disorders.
[6] A GAF score between 51-60 is equated with moderate symptoms (*i.e.*, flat affect and circumlocutory or roundabout speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*i.e.*, few friends, conflicts with peers or co-workers).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A. Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*  The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.** <u>**Substantial Gainful Activity**</u>

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 14, 2011, the date of Plaintiff's application for disability benefits. (R. 12). Plaintiff does not contest this determination.

### C. Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the durational requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of fractured right arm and shoulder with post-traumatic damage and panic disorder with agoraphobia (R. 12), that Plaintiff's hepatitis C, cirrhosis, history of alcohol abuse in remission, complaints of foot pain, obesity and psoriatic arthritis were not severe (R. 13), and that Plaintiff did not have an impairment or combination of impairments as

11

defined under 20 C.F.R. § 404.920(c). (R. 21-24). Plaintiff does not contest the ALJ's step two findings.

### D. Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major Dysfunction of a Joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety Related Disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 14.09 ("§ 14.09") (Inflammatory Arthritis). In this case, the ALJ found that Plaintiff's impairments did not meet or equal the criteria for disability under §§ 1.02, 12.04, 12.06, and 14.09 of listed impairments. Plaintiff does not contest the ALJ's findings under step three of the disability review process.

### E. Residual Functional Capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*,

675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts, at the fourth step, to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with limitations to working in areas with unprotected heights, around moving or dangerous machinery, areas exposed to excessive pulmonary irritants, no climbing ropes, ladders or scaffolds, and occasional limitations to maintaining attention and concentration for extended periods, responding appropriately to changes in the work setting, and dealing with stress. (R. 24). In particular, the ALJ determined that Plaintiff was capable of performing work at a medium level of exertion with limitations to no lifting more than five pounds with the right

13

hand and arm, no overhead work on the right side, the ability to use the right hand using the right arm as a prop, no climbing ladders, ropes, or scaffolds, no more than occasional stooping, balancing, crouching, no climbing, kneeling, or crawling, no work around heights or dangerous moving machinery, no work with the general public, no more than frequent work with coworkers and no more than occasional work with supervisors. (R. 16). The ALJ afforded limited weight to Dr. Zambron's finding that Plaintiff should avoid work outside of Plaintiff's home (R. 20) and determined that Dr. Zambron's finding that Plaintiff would have difficulty working outside the home did not preclude Plaintiff from working outside of his home. (R. 20-21).

Plaintiff contends that the ALJ erred by interpreting Dr. Zambron's finding that Plaintiff should avoid work outside of Plaintiff's home to indicate that Plaintiff retained some ability to work, Plaintiff's Memorandum at 18, that the ALJ should have afforded Dr. Zambron's opinion more weight as the most current opinion in the record, Plaintiff's Memorandum at 20-21, and that the ALJ was required to re-contact Dr. Zambron for any ambiguities related to Dr. Zambron's expectations on Plaintiff's future ability to work. Plaintiff's Memorandum at 19. Defendant maintains that the ALJ correctly interpreted Dr. Zambron's opinion to indicate that Plaintiff was not precluded from all work, Defendant's Memorandum at 18-19, that the ALJ properly weighed Dr. Zambron's opinion against the opinions of Drs. Andrews, Fabiano, Findlay, Kreeger and Counselor Galanti, Defendant's Memorandum at 19, 23, and that the ALJ was not required to recontact Dr. Zambron to clarify Dr. Zambron's opinion on Plaintiff's future ability to work. Defendant's Memorandum at 21.

14

The Act requires ALJs to grant significant weight to treating physician opinions supported by medical evidence in the record and afford "controlling weight" to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *See Farnham v. Astrue*, 832 F.Supp.2d 243, 258 (W.D.N.Y.) citing 20 C.F.R. § 404.1527(d)(2).

Assuming, *arguendo*, that Dr. Zambron's finding that Plaintiff should avoid all work outside of Plaintiff's home indicates that Plaintiff is unable to work in any setting, such a finding is not supported by substantial evidence in the record. In particular, on October 11, 2011, Dr. Fabiano evaluated Plaintiff with the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions and deal with stress, and opined that Plaintiff's psychiatric problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis. (R. 468). On October 19, 2011, Dr. Findlay opined that Plaintiff had the residual functional capacity to perform light work with limitations to lifting and carrying 10 pounds frequently, occasionally lifting 20 pounds, and walking and standing for six hours in an eight-hour day, and that Plaintiff should have limited exposure to repetitive overhead activity with his right shoulder. (R. 483). On June 27, 2012, Counselor Galanti noted that Plaintiff's ability to function was 81 percent or higher when he was not using drugs and drinking alcohol and taking his medication as prescribed. (R. 623). On July 11, 2014, Dr. Kreeger noted that Plaintiff's anxiety was situationally related to Plaintiff's relocation by his probation officer. (R.

1129). Substantial evidence in the record therefore supports the ALJ's determination to assign less weight to Dr. Zambron's opinion that Plaintiff should avoid work in any setting. The ALJ's residual functional capacity assessment of Plaintiff is therefore supported by substantial evidence and Plaintiff's motion on this issue is DENIED.

Plaintiff's motion, Plaintiff's Memorandum at 24, that Plaintiff's worsening mental condition renders the opinions of Dr. Fabiano on October 10, 2011 (R. 465), Dr. Andrews on November 8, 2011 (R. 494-508), and Counselor Galanti on June 27, 2012 (R. 623) stale is also without merit as Plaintiff's later examinations, *i.e.,* with Ms. Merritt and Dr. Kreeger, showed Plaintiff with improved anxiety and functioning. In particular, on February 21, 2014, Ms. Merritt noted that Plaintiff was attending ITT Technical School ("ITT"), studying network administration, worked part-time at ITT and expected to graduate in August 2014. (R. 1044). On July 11, 2014, Dr. Kreeger noted that Plaintiff exhibited only situational anxiety, was attending school and was able to distract himself by watching television. (R. 1129). Plaintiff's motion on this issue is therefore without merit and DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 15) is DENIED; Defendant's motion for judgment on the pleadings (Doc. No. 17) is GRANTED. The Clerk of the Court is ordered to close the file.

So Ordered.

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 4, 2018
           Buffalo, New York